NOTICE
Decision filed 05/27/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190501-U

NO. 5-19-0501

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| STRANO & ASSOCIATES, LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-LM-338 |
| | ) | |
| DANIEL HALE and ERIN HALE, | ) | Honorable |
| | ) | Kevin T. Hoerner, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appeal is dismissed for lack of jurisdiction where the defendants failed to file a timely notice of appeal.

¶ 2    The plaintiff, Strano & Associates, Ltd., filed an action against *pro se* defendants, Daniel Hale and Erin Hale, seeking a judgment of eviction and damages based on the alleged breach of a residential lease. Following a bench trial, the circuit court entered a judgment in favor of the plaintiff. The defendants filed a series of successive postjudgment motions, each of which was denied, and then filed a notice of appeal. On appeal, the defendants claim, among other things, that the circuit court erred in denying their pretrial "motion for a verdict as a matter of law," because the plaintiff affirmed the lease by

1

accepting monthly payments after learning of the lease violations. The plaintiff contends that the appeal should be dismissed for lack of jurisdiction because the defendants failed to file a timely notice of appeal.

¶ 3                                    I. BACKGROUND

¶ 4     On January 1, 2019, the defendants executed a written lease on a residential property located in St. Clair County, Illinois. At that time, the plaintiff served as the property manager for the property. Under the terms of the lease, the landlord agreed to lease the property to the defendants for a period of 36 months, for use as a residential dwelling, at a monthly rate of $1850. The landlord, however, reserved the right to enter the property at any reasonable time to conduct inspections and make necessary or agreed repairs, alterations, and improvements.

¶ 5     On February 7, 2019, the plaintiff's employee, Andrea Huschle, conducted an inspection of the leased premises pursuant to terms of the lease. Huschle then prepared a 23-page report, containing her notes and photographs depicting the conditions of the premises on the date of the inspection. In the report, Huschle indicated that the house was in "bad overall condition." She observed fire and safety hazards, unsanitary conditions, property damage, and the presence of animals on the property. Based on those conditions, Huschle prepared a "10-Day Notice to Vacate." On February 9, 2019, Huschle went to the leased premises and left the notice with the defendants' 17-year-old daughter. The notice informed the defendants that they had breached or failed to comply with several provisions in the lease, including articles 8 and 27.

2

¶ 6    According to article 8 of the lease, the tenants agreed to keep the premises "in a clean and sanitary condition, change light bulbs and furnace filters, and to maintain working smoke alarms and carbon monoxide detectors." Article 27 contained several additional provisions. Under paragraph (B) of article 27, the tenant agreed to maintain the property and grounds in the same condition as at the beginning of the lease. Under paragraph 27(A) the tenant agreed to pay all attorney fees, court costs, and other expenses that may be incurred by the landlord in enforcing the terms of the lease. Under paragraph 27(R), "waiver by either party of the breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach."

¶ 7                              A. The Eviction Proceedings

¶ 8    On February 25, 2019, the plaintiff filed a complaint for eviction against the defendants in the circuit court of St. Clair County and alleged that the defendants materially breached the lease. As to specific violations, the plaintiff alleged, in pertinent part, that the defendants failed to maintain the property in a clean and sanitary condition in violation of articles 8 and 27(B) of the lease. The plaintiff further alleged that on February 9, 2019, the defendants were served with a 10-day notice to vacate the premises, that the plaintiff was entitled to possession, and that the defendants were unlawfully withholding possession.

¶ 9    In terms of relief, the plaintiff sought an order granting it immediate possession of the property and an order directing the defendants to leave the premises, to remove their possessions at their expense, and to pay any unpaid rent that may accrue. The plaintiff requested payment of its attorney fees and expenses, pursuant to article 27(A) of the lease, and further relief as the court deemed appropriate. The lease, certificate of occupancy,

3

inspection report dated February 7, 2019, and 10-day notice to vacate were attached to the complaint. Summons were issued setting an initial appearance date for March 18, 2019.

¶ 10    On March 11, 2019, the defendants filed a *pro se* motion to continue the first appearance. The defendants stated that Daniel Hale was an active-duty service member and medical care provider in the United States Army, that he was tasked to treat patients at an army base in Fort Leavenworth, Kansas, and that he was scheduled for leave from April 18, 2019, through April 24, 2019, for their family's spring break. The defendants indicated that Daniel Hale could extend his leave through April 26, 2019, and requested a continuance until April 25, 2019, or a later date convenient to the court.

¶ 11    On March 18, 2019, the defendants appeared *pro se* for the initial hearing. Daniel Hale presented a motion to stay the proceedings for 90 days under section 3932 of the Servicemembers Civil Relief Act (SCRA) (50 U.S.C. § 3932 (2018)). The plaintiff objected, arguing that the SCRA did not apply to eviction proceedings and that a trial was necessary because the defendants were committing waste in the premises. Following the arguments, the trial court took the matter under advisement.

¶ 12    On March 19, 2019, the trial court issued an order granting the defendants' motion to stay the proceedings until May 20, 2019, a period of 63 days, and denying their motion for continuance as moot. Thus, the relief granted by the court was less than the 90 days requested in the defendants' motion for stay but more than the time originally requested in the defendants' motion to continue. The court also extended the time for filing the defendants' answer or responsive pleading and scheduled a status hearing on May 20, 2019.

On April 8, 2019, the court denied the plaintiff's request to reconsider the stay but changed the May 20, 2019, setting from a status hearing to a bench trial.

¶ 13 On May 7, 2019, Andrea Huschle returned to the leased property for a follow-up inspection to determine whether the violations of the lease had been remedied. Despite proper notice, the defendants refused to admit Huschle onto the property and called the police. Sheriffs' deputies responded and, after reviewing the paperwork, permitted Huschle to enter onto the premises. During the inspection, Huschle found that the overall condition of the property had worsened, and she documented her findings with photographs.

¶ 14 On May 20, 2019, the defendants electronically filed (e-filed) their *pro se* appearances and requested a "trial by judge," using a standard form approved by the Illinois Supreme Court. The defendants also filed an answer and a counterclaim. In the answer, the defendants denied that they materially breached the lease and specifically denied that they failed to maintain the property in a clean and sanitary condition. As a defense, the defendants asserted that the 10-Day Notice to Vacate was impermissibly vague in that it did not identify specific violations of the lease, and therefore, they were unable to cure the alleged violations.

¶ 15 In their counterclaim, the defendants asserted that the plaintiff had harassed them and interrupted their right to quiet enjoyment of the property since February 2019. The defendants further asserted that the eviction action was filed in retaliation for, among other things, the defendants' demand for 24 hours' notice of any inspection. The defendants asked the trial court to deny the plaintiff's requests for eviction, immediate possession, and attorney fees. They sought an order barring the plaintiff from coming onto the property

5

except to make emergency repairs, barring future inspections, and directing the plaintiff to destroy all inspection reports and photographs. The defendants also requested an order awarding them *pro se* attorney fees and costs, a sum of money to reimburse the Department of Defense for salary paid to Daniel Hale during the proceedings, and other relief as the court deemed proper.

¶ 16　On that same day, prior to the presentation of any evidence or witnesses, the defendants filed a "Motion for Verdict As A Matter of Law." The defendants argued that under Illinois law, the plaintiff affirmed the existence of the lease and waived all claims related to the alleged lease violations when it accepted rent payments in March, April, and May 2019, with knowledge of those violations. In a ruling from the bench, the trial court denied the defendants' motion for a verdict as a matter of law, finding the plaintiff had not committed any act to affirm the lease or waive its claim for eviction. The court pointed out that the plaintiff had been ready to proceed on its complaint for eviction, and that the case had been stayed, upon the defendants' motion.

¶ 17　Following completion of pretrial motions, the case proceeded to trial. During the trial, the evidence was largely focused on the allegation that the defendants failed to maintain the property in a clean and sanitary condition. The plaintiff called Andrea Huschle as a witness. Huschle described the unsafe and unsanitary condition of the property and the damage she discovered during her inspection of the property in February 2019 and the follow-up inspection in May 2019. Huschle also authenticated photographs of the property taken three months before the defendants moved in and photographs taken during her inspections. In their defense, Daniel Hale and Erin Hale testified that they had to clean

6

several areas in the house before they could move their furniture in and unpack. The defendants stated they were still unpacking boxes and several rooms were cluttered when the inspection occurred in February 2019. The defendants called their oldest daughter as a witness, and they presented, by stipulation, the statements of a family friend in support of their defense.

¶ 18    After hearing the testimony and reviewing the lease, the photographs, and other exhibits, the trial court found that the plaintiff proved that the defendants were in material breach of paragraphs 8 and 27(B) of the lease and entered a judgment for the plaintiff. The court granted the plaintiff leave to file an affidavit regarding its claim for attorney fees and expenses and stated that the court would prepare a final judgment after reviewing the affidavit. At the close of the proceedings, the defendants asked the court about the time for filing an appeal. The court replied that the defendants would have 30 days from the date of the final order.

¶ 19    On May 21, 2019, the plaintiff submitted an itemized statement and an affidavit listing the attorney fees and expenses incurred in the case. The plaintiff sought an award of $5584 in legal fees and $318.73 in expenses.

¶ 20    On May 23, 2019, the trial court entered a final judgment. The court determined that the plaintiff presented substantial evidence to establish that defendants breached the lease by violating articles 8 and 27(B) and stated that it would make no findings as to the other alleged violations of the lease. The court found that the home had been in "move-in condition" a few months before the defendants moved in, that the condition of the property "dramatically changed" in a little over a month after the defendants moved in, and that the

follow-up inspection in May 2019 revealed that the conditions in the premises had worsened and become more dangerous. The court rejected the defendants' contentions that the home was merely cluttered. The court found that the defendants had been given a 10-day notice to remedy the violations or vacate the premises, and the defendants had not remedied the conditions or vacated the premises.

¶ 21 The court also confirmed its pretrial ruling denying the defendants' claim that the plaintiff waived any breach of the lease when it accepted rent payments from the defendants. In addition to its previous findings, the court found, based on the evidence presented during the trial, that the lease violations were of a continuing nature, and therefore, the payment of rent did not excuse the breach or otherwise result in a waiver of the landlord's right to terminate the lease. The court entered a judgment for the plaintiff on the eviction claim. The court ordered the defendants to remove their possessions and surrender possession of the property to the plaintiff on or before June 15, 2019. The court further ordered the defendants to pay accrued rent through the date of surrender, and to pay the plaintiff's attorney fees and expenses, totaling $5902.73, pursuant to article 27(A) of the lease. The court also entered a judgment against defendants on their counterclaim.

¶ 22 B. The Postjudgment Proceedings

¶ 23 On June 14, 2019, the defendants filed a "Motion to Reconsider Denial Of The May 20, 2019 Pretrial Motion." The defendants reasserted their argument that the plaintiff's act of accepting rent for the months of March, April, and May 2019 constituted a waiver of a right to terminate the tenancy. They also argued that the trial court erred in finding a continuing breach where the alleged violations of the lease had existed for only three

8

months and, therefore, were not of sufficient duration to constitute a continuing breach. The defendants asked the court to vacate the May 23, 2019, judgment and issue a verdict in their favor. The defendants further requested that the court deny the plaintiff immediate possession; set aside the order directing the defendants to remove their possessions and vacate the premises; deny the plaintiff's request for attorney fees and costs; allow the defendants to terminate the lease provided they locate and secure acceptable alternate housing at any time prior to expiration of the lease; order the plaintiff to pay the defendants' litigation costs and fees, and for other relief as the court deemed appropriate.

¶ 24 On June 28, 2019, the plaintiff filed a motion for holdover rent, additional attorney fees, and sanctions. The plaintiff claimed that the defendants did not vacate the residence by June 15, 2019, per the order of the court, and that the defendants were therefore in a tenancy at sufferance, requiring them to pay $100 per day until they vacated the residence under article 20 of the lease. The plaintiff further argued that the final judgment had not been stayed because the defendants' posttrial motion to reconsider was directed against a pretrial order and not against the final judgment. The plaintiff claimed that it incurred attorney fees and costs in seeking holdover rent and in responding to the defendants' postjudgment motion, and sought additional attorney fees and costs pursuant to article 27(A) of the lease. The plaintiff also moved for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). In its motion, the plaintiff alleged that defendant Erin Hale signed a pleading on behalf of defendant Daniel Hale, even though she was not a licensed attorney, and that Erin Hale represented that she had emailed the defendants' motion to reconsider to plaintiff's counsel when she had not done so.

9

¶ 25 On July 9, 2019, the defendants filed a "Motion After Judgment: Amended Motion to Reconsider Denial of the May 20, 2019 Pretrial Motion." The amended motion to reconsider raised the same basic claims of error, with a reorganization of the points and sub-points, and same requests for relief as asserted in the motion to reconsider. The defendants added an additional factual allegation stating that on May 25, 2019, the plaintiff had accepted full payment of the rent for June 2019, even though the judgment directed a payment of $925, or one-half of the June 2019 rent. The defendants claimed that, in doing so, the plaintiff reinstated tenancy and waived the right to evict.

¶ 26 On July 11, 2019, the trial court heard arguments on all pending motions. Following the hearing, the court denied the defendants' postjudgment motions filed June 14, 2019, and July 9, 2019. The court granted the plaintiff's motion for holdover rent. The court ordered that from June 15, 2019, to July 15, 2019, rent would be charged at $1850, and that beginning on July 16, 2019, rent would accrue at the rate of $100 per day, pursuant to paragraph 20 of the lease. The court granted the plaintiff's motion for attorney fees and costs pursuant to article 27(A) of the lease and directed plaintiff's counsel to submit an affidavit of fees and expenses. The court denied the plaintiff's motion for sanctions. The court stated that its judgment of May 23, 2019, "remained as stated," and that the "put out" date remained June 15, 2019.

¶ 27 Immediately after the hearing on July 11, 2019, the defendants filed a third postjudgment motion. In this "Post-Judgment Motion: Motion to Vacate Judgment of May 23, 2019," the defendants claimed that their due process right to a trial by jury had been violated because of the actions of the plaintiff's counsel. The defendants alleged that when

10

plaintiff's counsel drafted the order on April 8, 2019, converting the May 20, 2019, setting from a status hearing to a trial setting, counsel indicated that the matter was set for a *bench* trial, even though the court had given the defendants additional time to enter their appearances and file an answer or responsive pleading. The defendants also claimed that the trial court erred in admitting the inspection photographs as evidence, asserting they were unlawfully obtained and inadmissible, and in allowing the plaintiff to call any witnesses because the plaintiff had not produced a witness list. The defendants further claimed that the trial court violated section 3932 of the SCRA, when the court granted a 63-day stay of proceedings, instead of the statutorily mandated 90-day stay. The defendants prayed for the same relief as they had in the prior postjudgment motions.

¶ 28    On July 15, 2019, the plaintiff filed a response to the defendants' third postjudgment motion and moved for sanctions. As a matter of procedure, the plaintiff argued that the defendants' motion was untimely, noting that it had been filed 49 days after the entry of the written judgment, and after the trial court heard and denied the defendants' first two postjudgment motions. The plaintiff also argued that the defendants waived their claims of error because they failed to include them in their initial postjudgment motion. In addressing substantive issues, the plaintiff noted that the defendants did not request a jury trial or pay the jury trial fee, and that the defendants did not seek a supplemental stay of the proceedings. The plaintiff moved for sanctions under Supreme Court Rule 137, arguing that the defendants filed an untimely, successive postjudgment motion to cause delay and avoid the judgment. The plaintiff sought a monetary sanction and an order barring the defendants from filing additional motions or pleadings without leave of court.

¶ 29    All pending motions were set for hearing August 8, 2019. At 9:05 a.m. that day, the defendants filed an "Amended Post-Judgment Motion: Motion to Vacate Judgment of May 23, 2019." The motion included the same issues raised in their prior pleading, with some elaboration on their prior arguments. The defendants also included new arguments, claiming that the plaintiff enforced the judgment of eviction without providing the defendants with a 48-hour notice to vacate, and that the eviction was an illegal lockout of a tenant and a violation of section 3951 of the SCRA (50 U.S.C. § 3951). The defendants further claimed that the plaintiff and its employees deliberately destroyed or damaged a significant portion of the defendants' belongings during the eviction. The defendants restated their prior requests for relief and requested an order directing the plaintiff to pay for all damaged and destroyed property, and sanctions.

¶ 30    Following the hearing on August 8, 2019, the trial court denied the defendants' third and fourth postjudgment motions. The court held the plaintiff's motion for sanctions in abeyance and ordered the plaintiff to submit an affidavit in support of its request for attorney fees. On August 14, 2019, the plaintiff filed an affidavit and itemized statement requesting $4624.76, covering the plaintiff's attorney fees and expenses incurred between May 21, 2019, and August 9, 2019.

¶ 31    On August 22, 2019, the court issued a supplemental order granting the plaintiff's motion for holdover rent and additional attorney fees. In the order, the court found that the defendants had been set out of the property on July 22, 2019, and that the defendants had paid no rent in July 2019. The court ordered the defendants to pay $1625 in accrued rent and $4625.76 in attorney fees and costs to the plaintiff.

¶ 32     On September 9, 2019, the defendants filed a "Post-Judgment Motion to Reconsider Post-Judgment Motions Heard On July 11, 2019 And August 8, 2019." In this motion, the defendants rehashed their prior arguments of trial court error. The defendants prayed for an order vacating the judgments on May 20, 2019, and May 23, 2019, and an order directing the plaintiff to return their security deposit and to pay all expenses related to their eviction, including the defendants' costs and fees associated with the suit.

¶ 33     On September 17, 2019, the plaintiff filed a written objection to the defendants' fifth postjudgment motion and renewed its motion for sanctions. The plaintiff argued that the motion to reconsider was untimely and improper under the Code of Civil Procedure. The plaintiff further argued that the defendants did not raise any new arguments or allege the existence of newly discovered evidence that was previously unavailable at the time of the hearing.

¶ 34     On October 2, 2019, the defendants filed an "Amended Post-Judgment Motion to Reconsider the Post-Judgment Motions Heard on July 11, 2019, and August 8, 2019." The defendants' 26-page pleading rehashed the arguments that had been previously made and previously rejected.

¶ 35     On October 3, 2019, the trial court heard arguments on all pending motions. In an order entered that day, it took the defendants' fifth and sixth postjudgment motions under advisement. The court granted the plaintiff's renewed motion for sanctions and directed the plaintiff to submit a proposed order for sanctions, including a sanction prohibiting defendants from filing additional pleadings for motions without prior approval of the court.

13

The court further directed the plaintiff to submit an affidavit in support of its request for attorney fees.

¶ 36　　On October 10, 2019, the court denied the defendants' postjudgment motions. On October 24, 2019, the plaintiff filed a supplemental affidavit seeking an additional $1124.84 in attorney fees and expenses incurred between August 9, 2019, and October 18, 2019.

¶ 37　　In an order file-marked October 28, 2019, the trial court granted the plaintiff's motion for sanctions, finding that the defendants had repeatedly filed motions containing arguments that had been previously considered and denied. The court awarded the plaintiff $1124.84 in attorney fees and expenses as a sanction and directed that the defendants should not file any additional pleadings or motions in this matter without prior leave of court. The court reserved the right to impose additional sanctions if the need arose. The court also retained jurisdiction for purposes of enforcing the terms of the order. This appeal followed.

¶ 38　　　　　　　　　　　　　　II. ANALYSIS

¶ 39　　On appeal, the defendants have raised no less than 16 points in their *pro se* brief.[1] The defendants' primary contentions may be grouped as follows: (1) whether the plaintiff's acceptance of rent payments constituted an affirmation of the lease and a waiver of the right to terminate the lease; (2) whether the trial court erred in failing to allow a 90-stay of

---

[1] In their brief, the defendants failed to provide the appropriate standard of review for their points on appeal, and many of their arguments do not contain citations to the record and supporting legal authority as required in Illinois Supreme Court Rule 341 (eff. May 25, 2018).

the proceedings; (3) whether the trial court committed prejudicial error in allowing the testimony of the plaintiff's witness, Andrea Huschle, and in admitting photographs taken by Huschle during the inspections of the leased premises in February and May 2019; and (4) whether there was sufficient evidence to support the trial court's verdict.

¶ 40    Before we may address the merits of the defendants' appeal, we must determine whether we have jurisdiction to consider it. Shortly after the defendants filed their notice of appeal, the plaintiff filed a motion to dismiss the appeal for lack of jurisdiction. The plaintiff claimed that the defendants' notice of appeal was filed more than 30 days after entry of the final order and more than six months after the final written judgment of eviction on May 23, 2019. The plaintiff also claimed that the filing of successive postjudgment motions did not extend the time for filing the notice of appeal. We initially denied the plaintiff's motion but allowed the plaintiff to reassert its jurisdictional arguments in its brief. The plaintiff raised the jurisdictional issue in its brief, and both parties have addressed the issue. Accordingly, we must determine whether the defendants' notice of appeal was timely filed. *Dus v. Provena St. Mary's Hospital*, 2012 IL App (3d) 091064, ¶ 9.

¶ 41    The path to this appeal was a long and winding one, with numerous postjudgment motions, objections thereto, and requests for sanctions. Our first task is to determine when the trial court's judgment became final and appealable.

¶ 42    Every final judgment of a circuit court in a civil case is appealable as of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). An appeal is a continuation of the proceedings in the circuit court from which the appeal is taken, and it is initiated by the filing of a notice of appeal.

15

Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). The timely filing of a notice of appeal is both jurisdictional and mandatory. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009).

¶ 43 This appeal was taken pursuant to Illinois Supreme Court Rule 303 (eff. July 1, 2017). Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides that a notice of appeal must be filed with the clerk of the circuit court within 30 days of a final judgment, unless a timely posttrial motion directed against the judgment is filed. If a timely posttrial motion is filed, the notice of appeal is due "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). A party may file only one postjudgment motion directed at a particular judgment. *Sears v. Sears*, 85 Ill. 2d 253, 259 (1981). A motion to reconsider a ruling on a posttrial motion or a successive postjudgment motion does not extend the time for filing a notice of appeal. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017); *Dus*, 2012 IL App (3d) 091064, ¶ 16.

¶ 44 Rule 303(a)(1) further provides that "[a] judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). A Rule 137 claim concerns the filing of an improper or frivolous pleading in the underlying action. Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

¶ 45 Rule 137(b) provides as follows:

"All proceedings under this rule shall be brought within the civil action in which the pleading, motion or other document referred to has been filed, and no violation or

16

alleged violation of this rule shall give rise to a separate civil suit, but shall be considered a claim within the same civil action. Motions brought pursuant to this rule must be filed within 30 days of the entry of the final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018).

¶ 46    Our supreme court has explained that "motions for sanctions under *** Rule 137 are 'claims' in the cause of action with which they are connected." *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339 (2001). Because a motion for sanctions under Rule 137 is a part of the underlying civil action, a notice of appeal cannot be filed before the circuit court has disposed of all claims, including Rule 137 motions, absent a finding pursuant to Supreme Court Rule 304(a)[2] that there is no just reason to delay enforcement or appeal. *Brown*, 197 Ill. 2d at 339-40. Under the plain language of Rule 137(b), a Rule 137 claim for sanctions must be filed within 30 days of the final judgment, or, within 30 days of the ruling on the postjudgment motion. Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018).

¶ 47    With these rules in mind, we consider the postjudgment pleadings in this case. On May 23, 2019, the trial court issued its final judgment on the plaintiff's complaint for eviction. On June 14, 2019, the defendants filed their initial postjudgment motion. The initial postjudgment motion was timely filed and was directed against the judgment. On June 28, 2019, while the defendants' postjudgment motion was pending, the plaintiff filed

---

[2]Under Supreme Court Rule 304(a), "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal for both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

17

a motion for holdover rent and requested attorney fees and expenses, pursuant to article 27(A) of the lease, for the time expended in responding to the defendants' postjudgment motion and in preparing the motion for holdover rent. The plaintiff also requested Rule 137 sanctions.

¶ 48 On July 11, 2019, the trial court denied the defendants' initial postjudgment motion and their amended postjudgment motion. The court also denied the plaintiff's motion for sanctions but granted the plaintiff's motion for holdover rent and its request for attorney fees. The court directed the plaintiff to file an affidavit itemizing its fees and expenses. In the order of July 11, 2019, the court made clear that its judgment of May 23, 2019, remained as stated, but the court did not make an express, written Rule 304(a) finding that there was no just reason to delay enforcement or appeal of that judgment. Because the court had yet to determine the amount of the attorney fees and costs to award to the plaintiff, the July 11, 2019, order did not dispose of all of the rights and liabilities in the case. At that point, the May 23, 2019, judgment was not appealable without a Rule 304(a) finding.

¶ 49 Before the ink was dry on the court's order of July 11, 2019, the defendants filed a third postjudgment motion. On July 15, 2019, the plaintiff filed an objection and a motion for Rule 137 sanctions, arguing that the defendants' pleading was an untimely and improper successive postjudgment motion. On August 8, 2019, the trial court denied the defendants' third postjudgment motion and a fourth postjudgment motion that the defendants had filed that day. The court, however, held the plaintiff's Rule 137 claim for sanctions in abeyance. In addition, the plaintiffs' claim for attorney fees remained pending. On August 22, 2019, the court made a specific award of attorney fees and costs to the

18

plaintiff, but the plaintiff's Rule 137 claim for sanctions remained unresolved. As noted earlier, a judgment is not final and appealable while a Rule 137 claim remains pending, unless the court enters an express written finding pursuant to Rule 304(a). Ill. S. Ct. R. 303(a)(1). The court made no such finding. On October 28, 2019, the trial court granted the plaintiff's Rule 137 claim for sanctions, awarded the plaintiff $1124.84 in attorney fees and expenses as a sanction, and directed that the defendants should not file any additional pleadings or motions in this matter without prior leave of court. In the period between the August 22, 2019, order and the October 28, 2019, order, the defendants filed two additional postjudgment motions, which were denied on October 10, 2019.

¶ 50   In sum, the defendants' initial postjudgment motion was timely filed on June 14, 2019. While the defendants' postjudgment motion was pending, the plaintiff made a timely claim for attorney fees on June 28, 2019, and a timely claim for Rule 137 sanctions on July 15, 2019. The plaintiff's claim for attorney fees and costs was finally determined on August 22, 2019, but the Rule 137 claim remained unresolved. And, on October 28, 2019, the court granted the plaintiff's Rule 137 claim for sanctions, and the trial court's judgment became final and appealable.

¶ 51   Having determined that the final order for purposes of appeal was entered on October 28, 2019, we must now determine whether the defendants filed their notice of appeal in the circuit court within 30 days of that order as required under Rule 303. Ill. S. Ct. R. 303 (eff. July 1, 2017). When computing the 30-day period, the date the order is entered is excluded and the whole of the 30th day is included, unless that day is a Saturday, Sunday, or a holiday. See 5 ILCS 70/1.11 (West 2018). In this case, the final order was

19

entered on October 28, 2019. Thus, the time for filing the notice of appeal began on October 29, 2019, and the 30th and last day to file the notice of appeal was November 27, 2019. The record shows that the defendants electronically filed (e-filed) their notice of appeal *with the clerk of the appellate court* at 11:59 p.m. on November 25, 2019. The defendants' filing was rejected at 8 a.m., on November 26, 2019, because the notice of appeal was filed in the appellate court, rather than the circuit court. In a comment accompanying the rejection, the defendants were notified that they "must first file the notice of appeal with the circuit court," and thereafter, the circuit court would e-file the notice of appeal with the appellate court.

¶ 52   When notified that their filing had been rejected, the defendants had two days in which to timely file a timely notice of appeal with the clerk of the circuit court. Had the defendants filed their notice of appeal on November 26, or November 27, the notice would have been timely. The defendants did not e-file their notice of appeal in the circuit court until Thursday, November 28, 2019. Because Thursday, November 28, 2019—Thanksgiving Day, and Friday, November 29, 2019, were court holidays,[3] the notice of appeal was not filed-marked until the following Monday, December 2, 2019. In this case, the notice of appeal was untimely, and the defendants did not seek leave to file a late notice of appeal under Supreme Court Rule 303(d) (eff. July 1, 2017).[4]

---

[3]Courts may take judicial notice of matters of common knowledge, and calendar dates are matters of common knowledge. See *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 726-27 (2009); *People v. Hawkins*, 284 Ill. App. 3d 1011, 1015 (1996).
[4]Under Supreme Court Rule 303(d), when a party has failed to file a timely notice of appeal, the reviewing court may grant that party leave to appeal if, within 30 days after the expiration of the time to file the notice of appeal, that party files a motion providing a reasonable excuse for failure to timely file the

¶ 53　The defendants claim that they timely filed the notice of appeal, albeit in the wrong court. They claim that the clerk of the appellate court was required to transfer the notice of appeal to the circuit court pursuant to Illinois Supreme Court Rule 365 (eff. July 1, 2007). We disagree. Supreme Court Rule 365 permits limited intra-district transfers when appeals are docketed in the wrong appellate district. See Ill. S. Ct. R. 365, Committee Comments (adopted Dec. 17, 1993). Rule 365 has no application where, as here, the defendants directed their appeal to the correct appellate district but failed to timely file their notice of appeal with the clerk of the circuit court. See *Swinkle v. Illinois Civil Service Comm'n*, 387 Ill. App. 3d 806, 810-11 (2009); *First Bank v. Phillips*, 379 Ill. App. 3d 186, 188 (2008).

¶ 54　The defendants also claim that the time for filing the notice of appeal was tolled under section 3936(a) of the SCRA (50 U.S.C. § 3936(a)). The SCRA is a federal law that extends financial and legal protections to person on active duty in the military service of the United States. See 50 U.S.C. § 3901 *et seq.* Subchapter II of the SCRA provides for protections against default judgments (50 U.S.C. § 3931), stays of civil proceedings (50 U.S.C. § 3932), and tolling of statutes of limitation during military service (50 U.S.C. § 3936). Section 3936(a) of the SCRA provides:

"(a) Tolling of statutes of limitation during military service

The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order *for the bringing of any action or proceeding* in a court, or any board, bureau, commission, department, or

---

notice of appeal, accompanied by the proposed notice of appeal and the filing fee. Ill. S. Ct. R. 303(d) (eff. July 1, 2017).

other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns." (Emphasis added.) 50 U.S.C. § 3936(a).

¶ 55    Here, the defendants have not cited any cases that support their contention that section 3936 of the SCRA tolls the time for filing a notice of appeal from the judgment of a trial court, and our research has yielded none. Section 3936 refers to the time for bringing or instituting an action or proceeding. 50 U.S.C. § 3936(a). As previously noted, an appeal is the continuation of the proceedings in the circuit court from which the appeal is taken. Ill. S. Ct. R. 301. Thus, we conclude that section 3936(a) does not toll the time for filing a notice of appeal from a judgment of the circuit court to the appellate court. In addition, the record shows that the defendants strategically sought to invoke the tolling provision in section 3936(a) only after learning that their notice of appeal was untimely filed.

¶ 56                                III. CONCLUSION

¶ 57    In summary, the defendants did not file a timely notice of appeal in the circuit court as required under Supreme Court Rule 303(a), and they did not seek leave to file a late notice of appeal under Supreme Court Rule 303(d). We are mindful of the difficulties faced by *pro se* litigants in attempting to navigate appellate procedure. Nevertheless, *pro se* litigants are presumed to have full knowledge of the applicable court rules and procedures, and we do not have authority to excuse the filing requirements governing notices of appeal. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 528 (2001). The defendants' notice of appeal was untimely. Accordingly, the appeal is dismissed for lack of jurisdiction.

¶ 58    Appeal dismissed.

22